AO 106 (Rev. 7/87) Affidavit for Search Warrant

# United States District Court

SOUTHERN            DISTRICT OF            CALIFORNIA

In the Matter of the Search of

(Name, address or brief description of person or property to be searched)

**Premises known as:**
1. One blue flip style Sanyo cellular telephone (DAC Number: 00602032222);

**APPLICATION AND AFFIDAVIT FOR SEARCH WARRANT**

CASE NUMBER: '08 MJ 1457

I _____ David Penta _____ being duly sworn depose and say:

I am a(n) __Border Patrol Agent with the United States Border Patrol__ and have reason to believe

that ☐ on the person of or ☒ on the property or premises known as (name, description and/or location)

See Attachment A

In the ___SOUTHERN___ District of ___CALIFORNIA___
there is now concealed a certain person or property, namely (describe the person or property to be seized)
    Attachment B

Which is: (state one or more bases for search and seizure set forth under Rule 41(b) of the Federal Rules of Criminal Procedure)
    Fruits, evidence, and instrumentalities of crimes against the United States,

Concerning a violation of Title   8   United States code, Section(s)   1324(a)(1)(A)
The facts to support a finding of Probable Cause are as follows:

    See Attached Affadavit

Continued on the attached sheet and made a part hereof.   ☒ Yes   ☐ No

_____
Signature of Affiant

Sworn to before me, and subscribed in my presence

5/8/08                              at   San Diego, California
Date                                     City and State

LOUISA S. PORTER
U.S. MAGISTRATE JUDGE                _____
Name and Title of Judicial Officer    Signature of Judicial Officer

# ATTACHMENT A

One blue flip style Sanyo cellular telephone (DAC Number: 00602032222)

## ATTACHMENT B

### ITEMS TO BE SEIZED

a. the telephone number and name/identity assigned to the telephone;

b. telephone numbers, names, and identities stored in the directory;

c. telephone numbers dialed from the telephone;

d. all other telephone numbers stored in the telephone's memory (including, but not limited to: received, missed and incomplete calls);

e. any other electronic information in the stored memory and/or accessed by the telephone (including: text messages, voice messages, alarms, direct connect addresses, and notes);

f. any electronic photographs, voice recordings, voice notes, calendar information contained within the cellular phone; and

g. all subscriber information

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF: ) <br> Sanyo Cellular Phone ) <br> DEC #: 00602032222 ) <br> ) <br> ) <br> ) | Case No. _____ <br><br> AFFIDAVIT IN SUPPORT OF <br> APPLICATION |

### I.

### PRELIMINARY MATTERS

I, David Penta, Border Patrol Agent (BPA), United States Border Patrol (USBP), being duly sworn, state:

1. I have been employed by the United States Border Patrol (USBP) since September 2002. I am currently assigned to the Immigration and Customs Enforcement (ICE) Human Trafficking Division as a Task Force Officer (TFO). The Human Trafficking Division is tasked with the responsibility of investigating, arresting, and prosecuting trafficking/smuggling organizations that utilize the Southern District of California as an operational corridor. These investigations are complex criminal investigations of mid to high-level criminal trafficking/smuggling organizations.

2. During my tenure with the Human Trafficking Division, several trafficking/smuggling organizations have been targeted by investigations which resulted in the issuance of arrest warrants, search warrants, seizure warrants and the indictments and convictions of persons for alien smuggling including guides, drivers, recruiters, arrangers, counterfeit or false document providers, and top-level principals.

3. In the course of my duties, I investigate and prepare for prosecution cases against persons involved in the inducement of illegal entry of undocumented aliens into the United States; the smuggling of undocumented aliens into the United States; the transportation and harboring of undocumented aliens within the United States; and the utilization of illegally-obtained, counterfeit, altered or genuine immigration documents by undocumented aliens to illegally gain entry or remain in the United States. On occasion, these investigations into smuggling may escalate to Human Trafficking which, defined, is the recruitment, harboring, transportation, provision, or obtaining of a person (regardless of citizenship or immigration status) for labor or services, through the use of force, fraud, or coercion / extortion for the purpose of subjecting a victim to involuntary servitude, peonage, debt bondage or slavery; or sex trafficking in which a commercial sex act is induced by force, fraud, or coercion, or in which the person induced to perform such act has not attained 18 years of age.

4. It is my experience and the experience of many of the law enforcement officers with whom I work that a conspiracy to traffic/smuggle aliens generates many types of evidence. Such evidence includes digital data from mobile telephones including, names, photographs, text-messages, phone numbers, and voice-mail recordings of communications. This evidence may be obtained or deduced from the following:

a) the telephone number and/or name and identity assigned to the telephone, and/or subscriber information;

b) telephone numbers, and/or names and identities stored in the directory;

c) telephone numbers dialed from the telephone;

d) other telephone numbers stored in the telephone's memory including, but not limited to, received, missed and incomplete calls, time of calls, length of calls;

e) information in the stored memory and/or accessed by the telephone, including, but not limited to, text messages, voice messages, and memoranda; and,

f) digital information stored within digital cameras, including, but not limited to, photographs, video, voice recordings, voice notes, calendar information.

## II.

## PURPOSE OF AFFIDAVIT

5. This affidavit is submitted in support of the application for the issuance of a search warrant for:

    a. Cellular telephone seized from Defendant Ramon QUINTEROS:

        1) Manufacturer: Sanyo DEC #: 00602032222

## III.

## DIGITAL DATA SEARCH PROTOCOL

6. Border Patrol Agents from the U.S. Border Patrol will deliver the seized item identified above to the San Diego Regional Computer Forensics Laboratory (RCFL) for analysis. Because digital mobile telephones do not have hard drives and do not store information in a volatile memory, they must be activated by Digital Forensic Agents (DFA) at the RCFL. The DFA will attempt to determine any necessary personal identification numbers required to activate the telephones in order to retrieve data stored therein. Examinations may be delayed in the absence of an appropriate charging device for the individual telephones. The DFA may be required to manually examine the telephones and their respective functions and record their findings utilizing digital photography. Because this process is time and labor intensive, and dependent upon the workload and availability of certified DFA's, the examination process may require several weeks.

3

## IV. STATEMENT OF FACTS

7. On May 3rd, 2008, Border Patrol Agent C. Liedecke observed three vehicles traveling in tandem traveling northbound on Interstate 805 approximately two miles north of the U.S/Mexico international border. Agent Liedecke immediately noticed that the vehicles were traveling at approximately the same speed, changed lanes in concert with one another and traveled with little space in between the vehicles. Agent Liedecke and other Border Patrol Agents followed the three vehicles to 226 Ash Street Chula Vista, California. Based upon Agent Liedecke's experience as a Border Patrol Agent he suspected that the vehicles may be engaged in alien smuggling.

8. Agents established surveillance on the residence and observed various activities adding to the suspicion of alien smuggling occurring at the residence. Agent Liedecke observed vehicles depart the residence with individuals seen departing the house and travel to Denny's Restaurant. Agent Liedecke observed occupants of the residence travel to Denny's Restaurant and return to the house only to pick up other occupants and return to Denny's Restaurant several times. Agent Liedecke believed that the organization was repeatedly going to Denny's to obtain food for the suspected undocumented aliens being kept within the residence.

9. Agents continued surveillance on the residence and at approximately 6:15 AM, several occupants were observed entering a white Nissan sedan and depart the residence. Border Patrol Agents attempted to conduct a vehicle stop on the Nissan sedan; however, the Nissan immediately accelerated and fled when Agents initiated their emergency lights. Agents pursued the vehicle for a short period of time; however, the pursuit was terminated based upon endangerment to public safety.

10. Agents returned to 226 Ash Avenue and attempted to contact the occupants of the residence. Upon contacting the residence, Agent Liedecke identified himself as a Border Patrol

Agent to three individuals he encountered near the rear of the residence. After conducting an immigration inspection, Agent Liedecke ascertained that one of the females was an undocumented alien from Mexico. The undocumented alien subsequently told Agent Liedecke that she resided on the property located at 226 Ash Avenue in a detached garage. Agent Liedecke requested and was granted permission by the undocumented alien to enter and search her residence, the detached garage. No contraband, evidence or other undocumented aliens were discovered in the detached garage. As Agent Liedecke traversed the property he noticed a shed approximately 15 feet from the garage. Agent Liedecke approached the shed and immediately noticed extreme heat emitting from the door jams. Agent Liedecke also noticed a strong amount of body odor emitting from the shed. Agent Liedecke knocked on the door of the shed and stated his identity. After a few moments, twenty-seven individuals, all of whom were later determined to be undocumented aliens, emerged from the shed.

11. After discovering and subsequently arresting the undocumented aliens discovered in the rear of the property, Chula Vista Police officers, who obtained consent from the resident of the main house, discovered eleven individuals. Border Patrol Agents conducted immigration inspections on each of the individuals after identifying themselves. Each of the eleven individuals admitted to be in the United States illegally, and was subsequently arrested. The resident, identified as Crystal MACIAS, of 226 Ash Avenue Chula Vista was arrested for violation of Title 8 USC 1324 Harboring. During a post-arrest interview, MACIAS admitted to knowing the undocumented aliens were in the residence. Furthermore, MACIAS stated that other individuals who reside at 226 Ash Avenue were also involved in the smuggling conspiracy.

12. On May 5th, 2008, Border Patrol agents returned to 226 Ash Avenue and contacted the occupants. Agents encountered Defendants Blanca BLANCO, Ramon QUINTEROS, and Jaime QUINTEROS, all of whom admitted to residing at 226 Ash Avenue.

5

Agent Liedecke identified himself and the other Border Patrol Agents to each of the individuals and subsequently requested permission to search the premises. Each of the residents consented to the search of the premises, and confirmed said approval by signing a Consent to Search form. No other undocumented aliens were discovered in the residence. Following completion of the search, Agents placed BLANCO, QUINTEROS and QUINTEROS under arrest for violation of Title 8 USC 1324 Harboring, based upon observations made at the residence on May 3rd, 2008, and statements made by Defendant Crystal MACIAS. Following the arrest of BLANCO, QUINTEROS and QUINTEROS, agents discovered and seized a cellular telephone from Ramon QUINTEROS as evidence of violation of Title 8 USC 1324 Harboring. Cellular telephone identified as a Sanyo bearing DEC #: 00602032222, was found in the possession of Ramon QUINTEROS. BLANCO admitted that she was harboring illegal aliens in exchange for $20.00 per alien for the alien-smuggling organization for which she was working. QUINTEROS admitted to being a "scout" driver for border patrol checkpoints where he and other individuals would determine if the checkpoint was nonoperational. QUINTEROS admitted to being paid $100 per instance of scouting in addition to attempting to lure law enforcement agents away from the house regarding this latest incident. QUINTEROS stated during a post-Miranda interview that he had received a phone call from one of the smugglers in the early morning of May 3, 2008 at approximately 1:45 a.m. QUINTEROS stated that the smuggler called his personal cell phone (619) 240-9939 in order to let him know that they had made it through the border. QUINTEROS stated that when the vehicles carrying the undocumented aliens arrived at the house, QUINTEROS went outside and opened the gate. QUINTEROS let the smuggler and the undocumented aliens in the property in order to harbor these individuals in violation Title 8 USC 1324 Harboring.

## V. CONCLUSION

13. Based on the above information and observations, I believe there is probable cause to search Sanyo cellular telephone (DEC #: 00602032222), in order to obtain evidence of alien smuggling.

Having signed this affidavit under oath, the affiant states that its contents are true and correct to the best of my knowledge, information and belief.

**FURTHER AFFIANT SAYETH NAUGHT**

Date: 5/8/2008

David Penta, Border Patrol Agent
United States Border Patrol

SWORN TO BEFORE ME AND SUBSCRIBED IN MY PRESENCE:

DATE: 5/8/08

SIGNATURE:

United States Magistrate Court Judge
San Diego, California